TICONIC NATIONAL BANK

*vs.*

THE FASHION WAIST SHOP COMPANY, and Trustee.

Androscoggin.    Opinion April 22, 1924.

*Trustee process may be maintained in cases where goods are sold in violation of the Bulk Sales Law, and allegations may be filed at time of hearing on trustee's disclosure.  Goods conveyed, or if sold, the proceeds thereof, in violation of the Bulk Sales Law, at least in equity or upon trustee process are held by vendee in trust for the creditors.  Where vendee in good faith has paid any creditors their respective share of the value of the goods sold shall be subrogated to the rights of such creditors upon trustee process, since equitable principles are frequently applied in determining the rights of parties upon such process.*

The knowledge of a member of a Board of Directors of a corporation cannot be imputed to the corporation, unless he was at the time in some way engaged in the corporation's business or acting in its behalf.

To permit the vendee to set off in full the amount paid other creditors would open the door to fraud and furnish a ready avenue of escape from the effect of the Bulk Sales Law.

The vendee having failed to comply with the law must be held to disburse the purchase price at his peril.    Any creditor omitted from a list not furnished

in accordance with the statute, is entitled to at least his *pro rata* share of the value of the goods sold, if his delay in presenting his claim is due to no fault of his.

Inasmuch as the maker of an accommodation note is liable to a holder for value with or without notice of the nature of the maker's obligation, the exception of the trustee to the exclusion of evidence to show the notes held by the plaintiff were accommodation notes and that the plaintiff had knowledge of the fact, cannot prevail.

On exceptions. An action to recover on two promissory notes, one for $2,500.00 and interest, and the other for $1,593.00 and interest, brought against defendant corporation and Hyman Margolin as trustee. The plaintiff, before maturity, discounted for defendant the notes in suit, one on August 3, 1921, and the other on September 12, 1921, and defendant, conducting a specialty store in Lewiston, on December 30, 1921, sold all of its assets including its stock of merchandise to the trustee in violation of the Bulk Sales Law, for five thousand dollars which was deposited with Benjamin L. Berman for the purpose of paying the creditors of the defendant corporation.

A list of creditors which did not include the name of the plaintiff was given to Mr. Berman and he, without knowing that plaintiff was a creditor, paid in full the creditors on such list, leaving in his hands $8.75.

A hearing was had on the disclosure of the trustee and the presiding Justice found that the value of the stock of merchandise was $2,000.00, and ruled that the trustee was entitled to a set-off only to the pro rata amount of the sums paid out by him to the creditors, and plaintiff excepted, and also excepted to other rulings of the presiding Justice as did the trustee. Exceptions of both the plaintiff and trustee overruled.

The case is fully stated in the opinion.

*Bradley, Linnell & Jones*, for plaintiff.

*Harry Manser and Benjamin L. Berman*, for trustee.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, JJ.

WILSON, J. An action brought to recover of the principal defendant on two promissory notes signed by it and payable to its treasurer, one Charles J. Clukey, and by him indorsed and discounted at the

plaintiff's bank, said notes being respectively dated August 3d, 1921, and September 12th, 1921, and maturing in two months after date.

On December 30th, 1921, the principal defendant through its treasurer negotiated a sale of all its business, including its stock in trade, fixtures, lease and good-will to the trustee in this action for the sum of $5,000.00. No inventory of the stock sold was made, nor were the creditors of the defendant notified in accordance with the provisions of Sec. 6, Chap. 114, R. S., which is commonly known as the Bulk Sales Law.

However, for the apparent purpose of carrying out the intent of the statute the purchase price was deposited with the counsel who acted for both parties in the transaction, and a list of creditors represented to be complete, was furnished counsel by the treasurer of the defendant Company, but which did not include the plaintiff; and the entire purchase price, not only of the stock in trade, but of the fixtures, lease and good-will, except $8.75, was, prior to May 22, 1922, disbursed by counsel among the creditors of the defendant Company according to the list furnished by its treasurer and in full of their respective claims.

On May 22d, 1922, counsel for the trustee received notice of the claim of the plaintiff Bank, which it does not appear had any notice of the sale and deposit of the purchase money with counsel, prior to its disbursement, unless knowledge of Mr. Clukey was notice to the plaintiff, he being a member of its Board of Directors during the entire transaction.

On June 8th, 1922, this action was brought, on which the purchaser, Hyman Margolin, was summoned as trustee of the defendant. It also appears that at the time of the bringing of the action practically all of the stock purchased had been sold by the trustee in the usual course of trade.

The writ was made returnable at the September Term, 1922, at which term the trustee appeared and filed his written statement in the usual form setting forth that there were no goods and effects in his hands belonging to the defendant and submitting himself to an examination on oath. It does not appear that he gave notice to the plaintiff's attorney or caused it to be minuted upon the docket of the court in accordance with Rule XII. of the Supreme Judicial Court.

Nothing more was done at the return term, except the defendant was defaulted for want of appearance in his behalf. At the January

Term, 1923, it was agreed that the question of whether the trustee should be charged might be heard by a justice of the court in vacation. On February 5th, 1923, the trustee was examined and his disclosure taken by a stenographer and duly sworn to and notice given by the trustee that at the hearing before the justice allegations would be filed by the trustee under Sec. 30, Chap. 91, R. S., and further evidence offered in their support.

On coming before the justice on February 12th, the trustee filed allegations setting forth certain facts, upon which, being proved, he contended he should not be adjudged trustee, and offered evidence in their support. Counsel for plaintiff objected to the filing of such allegations at this time and to the introduction of the evidence. The justice, however, allowed them to be filed and received the evidence.

The justice upon the disclosure of the trustee and the evidence in support of the allegations found that the purchase by the trustee was made in good faith, without any intent to delay or defraud the defendant's creditors, that the price of $5,000.00 was an adequate consideration and that the value of the stock in trade so sold was $2,000.00, that the trustee should be charged, but only for the *pro rata* amount of the value of the stock of goods that the plaintiff's claim bore to the total indebtedness.

The trustee at the hearing before the justice offered evidence in support of allegations that the plaintiff was not a creditor of the defendant, that the defendant did not owe its treasurer, Clukey, any money when the notes were given and that Mr. Clukey to whom the notes were made payable was at the time, and since has continued to be, a director of the plaintiff Bank, which was excluded.

The court found that the plaintiff was a bona fide creditor of the defendant and as such was entitled to share in the funds obtained from the proceeds of the sale of the goods by the trustee.

The plaintiff excepts to the ruling of the court that allegations might be filed by the trustee after his disclosure and to the receipt of any evidence in support thereof; also to the ruling or finding of the court that the value of the stock of goods was $2,000.00, and to the ruling by the court that the trustee was only charged for the pro rata amount of the plaintiff's claim, contending that the trustee should be charged for the full value of the goods sold, that he had no right of subrogation or set-off by reason of any sums disbursed to other creditors.

The trustee excepted to the ruling of the court excluding the evidence in support of his allegations that the defendant at the time the notes were given was not indebted to Mr. Clukey, that it was a mere accommodation maker and that Mr. Clukey at the time was a director of the plaintiff Bank, for the purpose of bringing home knowledge to the plaintiff of want of consideration as between Clukey and the defendant, and to the ruling that the plaintiff was a bona fide creditor. The trustee also excepted to the ruling of the court and the trustee should be charged for the pro rata amount of the plaintiff's claim, his contention being that he should be allowed to set off under Sec. 64, Chap. 91, R. S., the entire amount he had paid out to the other creditors.

Exceptions having been filed the whole case comes before this court for examination and the court may under Sec. 79, Chap. 91, R. S., correct any errors either in law or fact, *Meserve* v. *Nason*, 96 Maine, 412; *Thompson* v. *Shaw*, 104 Maine, 85, 95.

Reviewing the case, however, upon the points raised by the exceptions of both parties, we find no occasion for reversing or modifying the rulings and findings of the court below.

Allowing the allegations to be filed at the time of the hearing, while not commendable practice, was, we think, discretionary with the court and no abuse of judicial discretion appears in this case. The receipt of relevant evidence in their support follows then as a matter of course. Nor do we find any adequate reason for disturbing the finding of the court below as to the value of the stock in trade. Certainly the testimony of the treasurer, who negotiated the sale, that the goods were alone worth $8,000.00 after agreeing to the sale of the fixtures, the assignment of the lease and the conveyance of the good-will together with the stock in trade for $5,000.00 is not entitled to great weight.

Nor do we think that the plaintiff's contention that the trustee should be charged to the full value of the stock sold regardless of the sums paid to the other creditors is one which should prevail; or on the other hand, that the trustee's claim should be allowed that he be permitted under a right of subrogation or under Sec. 64 of Chap. 91, R. S., to set off the entire amount disbursed by him to other creditors against the value of the stock.

While there is some conflict of authority as to whether trustee or garnishment process is the proper remedy in cases where goods have

been sold in violation of a Bulk Sales Law, *McGreenery* v. *Murphy*, 76 N. H., 338; the weight of authority supports the rule, which seems to us consonant with the spirit and purpose of these laws and the nature of such process; that garnishment or trustee process is a proper remedy to reach goods in the hands of the purchaser which have been sold in violation of such laws, and especially the proceeds if they have again been sold by the purchaser. *Kohn* v. *Fishbach*, 36 Wash., 69; *Holford* v. *Trewella*, 36 Wash., 654; *Appel Mercantile Co.* v. *Barker*, 92 Neb., 669; *Scheve* v. *Vandeskolk*, 97 Neb., 204; *Interstate Rubber Co.* v. *Kaufman*, 98 Neb., 562; *Jaques & Tinsley Co.* v. *Carstarphen Warehouse Co.* 131 Ga., 1; *Linn Bank* v. *Davis*, 103 Kan., 672; *Musselman Grocer Co.* v. *Kidd, Dater and Price Co.*, 151 Mich., 478; *Oregon Mill & Grain Co.* v. *Hyde*, 87 Or., 163; *Owosso Carriage & S. Co.* v. *McIntosh &' Warren*, 107 Tex., 307; *Newman* v. *Garfield*, 93 Vt., 16. Also see Sec. 63, Chap. 91, R. S. While this section of our statutes was originally enacted to cover cases of transfers actually fraudulent as to creditors, we see no reason, as was said by the Vermont Court concerning a similar statute in that state, why it should not apply in cases when the conveyance was only fraudulent in law as in case of the Bulk Sales Law.

The result is the same in either case. As to the vendor and vendee and all the rest of the world the title passes, but as to creditors of the vendor the legal title has not passed and they may proceed against them in the vendee's possession or against the proceeds to the value thereof in case of resale by attachment or other appropriate proceedings as though they were still the property of the vendor.

The rule also seems equitable and is supported by authorities and we adopt it, that in case of a conveyance of goods in violation of the Bulk Sales Law, the goods so conveyed or the value thereof in case of resale, at least in equity or upon trustee process, should be treated as held by the vendee as in the nature of a trust fund for all the creditors, *Linn Bank* v. *Davis*, supra; *Kohn* v. *Fishbach*, supra; *Fitz Henry* v. *Munter*, 33 Wash., 629; *Fecheimer-Keifer Co.* v. *Burton*, 128 Tenn., 682; 51 L. R. A., (N. S.), 343; *Owosso Carriage and S. Co.* v. *McIntosh & Warren*, supra; and in case of proceedings in equity or upon trustee process, the vendee having in good faith paid any of the creditors their respective share of the value of the goods, shall be entitled to be subrogated to the rights of such creditor therein. *Linn Bank* v. *Davis*, supra; *Fecheimer-Keifer Co.* v. *Burton*, 128 Tenn.,

682; *Adams* v. *Young*, 200 Mass., 588, 591; *Rabalsky* v. *Levenson*, 221 Mass., 289, 292; *Parham* v. *Potts-Thompson Co.*, 127 Ga., 303, 305; 12 R. C. L., 530, Sec. 59; 27 C. J., Pages 885-887.

It is true that the doctrine of subrogation is equitable in its nature, but this court has frequently applied equitable principles in determining the rights of the parties upon trustee process, even though in form it is an action at law. *Stedman* v. *Vickery*, 42 Maine, 137; *Harlow* v. *Bangor*, 96 Maine, 294, 296.

It is also true that this trustee is in the position of having violated the provisions of the statute relating to the sale of goods in bulk, but there is no evidence that it was done with any intent to delay or hinder any creditor of the defendant. On the contrary, he appears in fact to have acted in good faith throughout.

If suspicions were to attach to anyone, it might more properly under the circumstances shown in this case be directed toward the plaintiff and the treasurer of the defendant company who omits the plaintiff from the list of creditors furnished the trustee and who at the time was a member of the Board of Directors of the plaintiff Bank.

However, the knowledge of the member of its Board of Directors cannot in law be attributed to the plaintiff, it not appearing that at the time he was in any way engaged in the plaintiff's business, or acting in its behalf, 7 R. C. L., 655. Nor does the evidence disclose any collusion between the treasurer of the defendant company and the plaintiff. We must, therefore, assume the plaintiff has also acted in good faith.

We see no valid reason why the plaintiff should occupy any better position than it would, if it had presented its claim earlier, the trustee's present position not being the result of any bad faith on his part. That the other creditors were paid in full is largely due to the fact that he was authorized by the defendant to use for that purpose not only the purchase price of the stock of goods, but also the consideration for the sale of the fixtures, lease and good-will on which the plaintiff could have no claim under the Bulk Sales Law. *Adams* v. *Young*, supra.

On the other hand to permit the trustee to set off in full under Sec. 64, Chap. 91, R. S., the amount paid to the other creditors would open the door to fraud and furnish a ready avenue of escape from the effect of the Bulk Sales Law. Under such a rule the vendor might turn over to the vendee a list of only such creditors as he might wish

to prefer, and if paid by the vendee in good faith and to the amount of the value of the goods sold, would leave the remainder of the creditors without a remedy.

The vendee, however, having failed to comply with the law, must be held to disburse the purchase price at his peril, if a creditor is omitted from the list furnished him, but not in accordance with the statute.    Such omitted creditor is entitled at least to his *pro rata* share of the value of the goods sold if his delay in presenting his claim is due to no fault of his.    The vendee who has proceeded to pay the other creditors in good faith may in a proceeding in equity or on trustee process still be subrogated to their *pro rata* claims against the goods, or their value in case of resale, and they are not sufficient to pay all claims in full.

The trustee's exception to the exclusion of evidence for the purpose of showing that the notes were accommodation notes, and that the plaintiff was charged with notice thereof by reason of the payee being a member of the Board of Directors, and to the ruling of the justice below, that the plaintiff was a bona fide creditor are also without merit.

If this objection were open to the trustee, we think it should have been raised at the first term before the defendant was defaulted; but inasmuch as the maker of an accommodation note is liable to a holder for value with or without notice of the nature of the maker's obligation under Sec. 29 of Chap. 257, P. L., 1917, his exceptions to the ruling of the court below on these points cannot prevail.

The exceptions of both the plaintiff and of the trustee are, therefore, overruled.    The case is remanded to the court below, the clerk to enter up judgment for the plaintiff against the trustee in accordance with the findings of the justice hearing the case, without costs to the trustee.